Date signed February 11, 2011



_____
PAUL MANNES
U. S. BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | |
|---|---|
| IN RE: | |
| ROBERT F. ROOD, IV | Case No. 08-17199PM |
| THE SOURCE, LLC | (Jointly Administered) |
| BLUE HORSESHOE PORTFOLIO SERVICES, LLC | Chapter 7 |
| LEVEL ONE CAPITAL PARTNERS, LLC | |
| BLUE HORSESHOE CAPITAL, LLC | |
| MATTERHORN FINANCIAL, LLC | |
| LEVEL ONE CAPITAL PARTNERS, LLC | |
| Debtors | |
| GARY A. ROSEN, TRUSTEE, et al. | |
| Plaintiffs | |
| vs. | Adversary No. 10-0510PM |
| ERNEST MORENO | |
| HELAINE MORENO | |
| d/b/a TARA ASSOCIATES, LLC | |
| Defendants | |

### MEMORANDUM OF DECISION

This adversary proceeding is before the court on the Defendants Ernest and Helaine

Moreno's Motion for Summary Judgment on the Plaintiff's[1] five count Complaint seeking a recovery aggregating $139,890.00 on behalf of the various bankruptcy estates. Count I of the Complaint seeks recovery of the rental payments made by the three entities as fraudulent conveyances under 11 U.S.C. § 548(a). Count II seeks recovery of the payments under MD CODE ANN. COM. LAW § 15-204 made applicable to this case by 11 U.S.C. § 544(b). Counts III and IV seeking recovery of a preference under 11 U.S.C. § 547(b) and a postpetition payment under 11 U.S.C. § 549(a) have been abandoned by the Trustee. Count V seeks preservation of the avoided transfers under 11 U.S.C. § 550.

This case involves the residence located at 10800 Balantre Lane, Potomac, Maryland, that Robert F. Rood, IV ("Rood") occupied under a lease dated June 26, 2006, with the Defendants, Ernest Moreno and Helaine Moreno ("Morenos"). Copies of the lease and an addendum appear in the record as Exhibit A to this Motion. The Morenos required that Rood's mother, Grace Rood, be jointly responsible when, as described in Mr. Moreno's affidavit, Rood refused to supply documentation of his salary of $175,000.00 and bonuses. Mrs. Rood signed the lease as a co-tenant, although she and her husband, Robert Rood, III, resided at their own residence. The Morenos were wise to insist upon Mrs. Rood becoming obligated under the lease, as Rood himself made none of the accruing rent payments. Rent was initially paid via wire transfer from the accounts of several of the corporate debtors (the "Debtor Entities") - namely, Level One Capital Partners, LLC, The Source, LLC, and Blue Horseshoe Portfolio Services, LLC - and thereafter by Grace Rood. The Morenos are wholly unconnected with Rood's fraudulent activities. Their only involvement with Rood was the rental of the residence to him. They never inquired into the relationship of the Debtor Entities that made the payments for Rood.

Section 548 of the Bankruptcy Code provides in relevant part:

**11 U.S.C. § 548. Fraudulent transfers and obligations**

> (a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

---

[1] The Plaintiff, Gary A. Rosen, is the Chapter 7 Trustee of the bankruptcy estates of Debtor, Robert F. Rood, IV, and the six related entities.

    (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
    (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
      (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
      (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
      (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
      (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

    \*   \*   \*   \*   \*

  (c) Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

    \*   \*   \*   \*   \*

  (d)(2) In this section--
    (A) "value" means property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor.

The relevant provisions of Maryland law are as follows:

**§ 15-203. Fair consideration.**
  Fair consideration is given for property or an obligation, if:
    (1) In exchange for the property or obligation, as a fair equivalent for it and in good faith, property is conveyed or an antecedent debt is satisfied; or
    (2) The property or obligation is received in good faith to secure a present advance or antecedent debt in an amount not disproportionately small as compared to the value of the property or obligation obtained.

> **§ 15-204. Conveyance by insolvent.**
> Every conveyance made and every obligation incurred by a person who is or will be rendered insolvent by it is fraudulent as to creditors without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration. (An. Code 1957, art. 39B, § 4; 1974, ch. 49, § 3.)

The Motion is premised on the argument that, because the Trustee has operated under the theory that Rood used the bank accounts of the Debtor Entities interchangeably and commingled all their financial dealings, these entities were nothing more than his alter egos. In other words, Rood's debts became the debts of the Debtor Entities. That being the case, Defendants assert that Section 548(c) provides a defense to the Trustee's fraudulent conveyance claim because the paying entities received "equivalent value" for their payment of Rood's rental of the Potomac residence. In support of this proposition, Defendants rely upon the following cases: *In re KZK Livestock, Inc.,* 221 B.R. 471, 478 (BC S.D. Ill. 1998); *In re Friedlander Capital Mgmt. Corp.*, 411 B.R. 434, 446 (BC S.D. Fla. 2009), and *In re Marquis Prods., Inc.*, 150 B.R. 487, 492 (BC Me. 1993). The court, however, does not accept this proposition as meeting the summary judgment standard that requires the absence of a dispute of any material fact that would entitle the Defendants to judgment as a matter of law. *See*, *e.g.*, *Cordes & Co., LLC v. Mitchell Cos., LLC*, 605 F. Supp. 2d 1015 (N.D. Ill. 2009) (denying summary judgment because a disputed issue of fact existed as to whether an indirect benefit was received). At this stage, the court is unable to find that the transactions in question did not deplete the bankruptcy estate of the transferors. *In re Jeffrey Bigelow Design Group, Inc.*, 956 F.2d 479, 486 (CA4 1992). *See also In re Chicago, Missouri & Western Ry. Co.*, 124 B.R. 769, 772 (BC N.D. Ill. 1991) ("Whether a transfer is made for reasonably equivalent value is a question which must be determined on the facts and circumstances of each case.").

Defendants apparently concede that the payment of Rood's rent did not provide any direct benefit to the Debtor Entities. For the purposes of summary judgment, they must fail on the issue of "indirect benefit" as well. As noted in the case of *In re Trigem America Corp.*, 431 B.R. 855, 867-868 (BC C.D. Cal. 2010):

> Indirect benefits can suffice as reasonably equivalent value if they are "fairly concrete and identifiable." *Official Comm. of Unsecured Creditors of TOUSA v. Citicorp N. Am* (*In re TOUSA, Inc.*), 422 B.R. 783, 846-50 (Bankr. S.D. Fla. 2009) [subsidiaries who conveyed liens for borrowed funds used for debts for which they were not liable received little or no benefit in merely forestalling the parent's bankruptcy]; *Greenspan v. Orrick, Herrington & Sutcliffe LLP et al.* ( *In*

*re Brobeck, Phleger & Harrison, LLP)*, 408 B.R. 318, 341 (Bankr. N.D. Cal. 2009) [insolvent law firm's waiver of profits in unfinished business in favor of individual partners did not result in sufficient indirect benefit]. Once the plaintiff makes a prima facie showing that no sufficient direct benefit was received in the transaction, it is the defendants' burden to prove sufficient indirect benefit that is tangible and concrete. *In re Brobeck*, 408 B.R. at 340; *In re TOUSA*, 422 B.R. at 844, citing *Pummill v. Greensfelder, Hemker & Gale (In re Richards & Conover Steel Co.)*, 267 B.R. 602, 614 (8th Cir. BAP 2001); *see also Clark v. Security Pac. Business Credit, Inc. (In re Wes Dor, Inc.)*, 996 F.2d 237, 243 (10th Cir. 1993); *Leonard v. Mountainwest Fin. Corp. (In re Whaley)*, 229 B.R. 767, 775 (Bankr. D.Minn. 1999). Moreover, the issue of "reasonably equivalent value" is determined from the perspective of the transferor's creditors and the court must analyze all the circumstances surrounding the transfer. *In re Brobeck*, 408 B.R. at 341-42.

As further explained in the case of *In re TOUSA, Inc.*, 422 B.R. 785, 867-868 (BC S.D. Fla. 2009):

> Defendants have failed to carry their burden of producing evidence of indirect benefits that were tangible and concrete, and of quantifying the value of those benefits with reasonable precision. Not a single expert or fact witness for Defendants has even attempted to quantify the value of the indirect benefits they claim were received by the Conveying Subsidiaries. For that reason, alone, it would be appropriate to rule in favor of Plaintiff on the issue of reasonably equivalent value.
>
> However, regardless of where the burdens of production or proof lie, Plaintiff has demonstrated that the Conveying Subsidiaries did not receive reasonably equivalent value, whether directly or indirectly. That is true both for the reasons set forth in my findings of fact and for the additional independent legal reasons set forth below.
>
> The language of section 548 is clear that "the debtor" must receive reasonably equivalent "value" "in exchange for" the transfer or obligation. 11 U.S.C. § 548(a)(1)(B)(I) (trustee may avoid transfer or obligation "if the debtor ... received less than a reasonably equivalent value in exchange for such transfer or obligation" (emphasis added)). That language means that an indirect benefit is cognizable only if three requirements are satisfied. First, the benefit must be received, even if indirectly, by "the debtor," i.e., by an individual Conveying Subsidiary. A benefit received by some other entity does not automatically become a benefit received by the debtor merely because both entities are engaged in a common business enterprise. Rather, the touchstone of a cognizable indirect benefit is whether " 'the debtor's net worth has been preserved' and the interests of the creditors will not have been injured by the transfer." *General Electric Credit Corp. v. Murphy* (*In re Rodriguez* ), 895 F.2d 725, 727 (CA11 1990) *(quoting Rubin v. Manufacturers Hanover Trust Co.*, 661 F.2d 979, 991). Moreover, it is irrelevant, in this context, whether TOUSA hoped, or even expected, that [the

transfer] would serve the best interests of the company's subsidiaries. The relevant inquiry under Section 548 is whether the Conveying Subsidiaries actually received reasonably equivalent value, not whether TOUSA (or the Defendants) hoped or expected that they would receive value.

Second, any purported "indirect benefits" defense must also be limited to cognizable "value." Section 548 does not refer to "benefits," whether direct or indirect. It requires reasonably equivalent "value" and includes a precise definition of "value" that encompasses only "property" and "satisfaction or securing of a present or antecedent debt of the debtor." 11 U.S.C. §§ 548(a)(1)(B)(i), (d)(2)(A). Since this case does not concern the satisfaction of the debt of any Conveying Subsidiary, "property" received by a Conveying Subsidiary is the only value that is relevant here.

Third, property must have been received by a Conveying Subsidiary "in exchange for" the transfer or obligation. Any "property" that a Conveying Subsidiary would have enjoyed, regardless of [the transfer], cannot be regarded as property received "in exchange for" the transfer or obligation.

In light of the legal principles set forth above, various of the purported indirect benefits championed by Defendants are legally irrelevant.

The statute entirely refutes Defendants' attempt to lump all of the TOUSA entities together for purposes of determining reasonably equivalent value. Section 548 makes clear that reasonably equivalent value must be received by the "debtor" itself-that is, by the same "debtor" that incurred the relevant obligation or made the relevant transfer. Thus, for example, the litigation-settlement value received by TOUSA has no relevance to whether or not the Conveying Subsidiaries participated in a fraudulent conveyance. Defendants assert that the bankruptcy of TOUSA would have deprived the Conveying Subsidiaries of a variety of services provided by TOUSA's corporate offices, such as access to a centralized cash management system, purchasing, payroll and benefits administration. However, many of these business "synergies" do not constitute "value" under section 548 because they are not "property." **FN55** Moreover, these benefits were not received by the Conveying Subsidiaries "in exchange for" the obligations and transfers. The Conveying Subsidiaries enjoyed all of these benefits long before [the transfer], and there is no evidence that they would have lost these benefits in the event of a TOUSA bankruptcy. Here, there is no need to speculate about what might have happened in this regard; TOUSA did file for bankruptcy, and the Conveying Subsidiaries in fact continued to receive the benefit of these corporate services after it did so.

> **FN55**. As a matter of natural usage, legal usage, and bankruptcy-law usage, the Conveying Subsidiaries could not receive "property" unless they obtained some kind of enforceable entitlement to some tangible or intangible article. *See* Webster's Third New Int'l. Dictionary 1818 (1986) (defining "property" in its

broadest sense as "something ... in which or to which a person has a right protected by law") (emphasis added); 11 U.S.C. § 541(a)(1) (defining "[p]roperty of the estate" to include "all legal or equitable interests of the debtor in property as of the commencement of the case") (emphasis added); *see also Bracewell v. Kelley ( In re Bracewell)*, 454 F.3d 1234, 1239 (CA11 2006) (debtor's "hope to an entitlement" not a property interest until it is legally cognizable).

\*   \*   \*   \*   \*

Based on the foregoing analysis, the indirect benefits asserted by Defendants cannot be credited. It is doubtful that any of the claimed benefits constitute (1) property (2) received by the debtor (3) in exchange for the obligation or transfer. Moreover, not a single expert or fact witness for Defendants has even attempted to quantify the value of the indirect benefits they claim were received by the Conveying Subsidiaries. It is clear, moreover, that the purported benefits, even if legally cognizable, and whether considered individually or as a whole, have value (if any) that falls well short of "reasonably equivalent" value. Accordingly, Defendants "indirect benefits" defense must fail. Plaintiff has proved that the Conveying Subsidiaries did not receive reasonably equivalent value in exchange for the obligations and liens.

The [transferees] did not take for value and in good faith and are not entitled to preserve liens and obligations under 11 U.S.C. § 548(c). Under 11 U.S.C. § 548(c), a transferee or obligee "that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation." To preserve liens and claims under this provision, the [transferees] must prove that they acted in good faith and "gave value to the debtor."

Moreover, transfers made solely for the benefit of a third party do not furnish reasonably equivalent value. *In re Bargfrede*, 117 F.3d 1078, 1080 (CA8 1997). While the Defendants gave Rood value, they did not give fair consideration that would amount to a defense to this action. The payment of another's debt is held to be a transfer without fair consideration. *In re B-F Building Corp.*, 312 F.2d 691, 694 (CA6 1963). *See* Annotation, *Transaction in consideration of discharge of antecedent debt owed by one other than grantor as based on "fair consideration" under Uniform Fraudulent Conveyance Act*, 30 A.L.R. 2d 1209, 1210 ("No case within the scope of this annotation has been discovered wherein the court has upheld a transaction, the consideration for which was the discharge of an antecedent debt owed by one other than the grantor, as based on 'fair consideration' under the Uniform Fraudulent Conveyance Act.").

At this point in the proceeding, the court cannot find as a matter of law that the corporate

identity can be disregarded and that the alter ego doctrine can be used as a shield by the Defendants. *See Lumpkin v. Envirodyne Indus., Inc.*, 933 F.2d 449, 460-461 (CA7 1991). Nor can the court conclude at this point that there was a symbiotic relationship between Rood and these entities or a unity of interest between Rood and the entities paying his residential rent. *See In re KZK Livestock, Inc.*, 221 B.R. 471, 478 (BC C.D. Ill. 1998), cited by the Defendants in support of their Motion.

Finally, for the reasons aptly summarized by the court in *Mann v. Hanil Bank*, 920 F. Supp. 944, 953 (E.D. Wis. 1996), the court concludes that the doctrine of judicial estoppel does not apply to this case:

> [T]he defendant Banks argue that the plaintiffs should be judicially estopped from arguing that Longreen was not simply an organ of MJ Korea when they made precisely that argument before this Court during the underlying Paliafito litigation. *See Lumpkin*, 933 F.2d at 460 (*citing Goldstein v. Scott*, 108 Ill. App. 3d 867, 64 Ill. Dec. 374, 378, 439 N.E.2d 1039, 1043 (1982)). In our view, the Plaintiffs have not taken inconsistent positions. In the Paliafito litigation, the Plaintiffs argued that MHW and Longreen were the alter egos of MJ Korea; here the plaintiffs argue that Longreen was not obligated to pay the debts of MAI, MHW, ConPro and UDL. Therefore, the Court concludes that the doctrine of judicial estoppel does not apply to this case.

An appropriate order will be entered.

cc:
John C. Moffett/Aaron Caruso, Esq., 401 N. Washington Street, Suite 550, Rockville MD 20850
Nelson C. Cohen, Esq., 1800 M Street, NW, Suite 1000, Washington, DC 20036
Augustus Curtis, Esq., 7910 Woodmont Avenue, Suite 1103, Bethesda, MD 20814
United States Trustee, 6305 Ivy Lane, #600, Greenbelt  MD  20770

**End of Memorandum**